DocuSign Envelope ID: 7387422C-7BD5-4E86-948D-ED5A0CEEE0B6

## <u>CONFIDENTIAL SETTLEMENT AGREEMENT AND</u>
## <u>GENERAL RELEASE OF ALL CLAIMS</u>

This Confidential Settlement Agreement and General Release of All Claims ("Agreement") is entered into between Tampa Sports Authority, its employees, predecessors, successors, assigns, affiliates, parents, subsidiaries, insurers, and related entities ("the Authority") and Stearns Poor and Phillip Roder ("Plaintiffs"). In consideration for the mutual promises set forth below, the Authority and Plaintiffs agree as follows:

1.      The parties to this Agreement wish to fully and finally resolve all disputes (known and unknown) between themselves including, but not limited to, those differences arising out of Plaintiffs' volunteer service with the Authority, as well as any claims for minimum wage compensation or other claims alleged (or which could have been alleged) in the case styled <u>Stearns Poor and Phillip Roder v. Tampa Sports Authority</u>, in the United States District Court for the Middle District of Florida, Case No. 8:21-CV-00317-CEH-TGW ("the Litigation").

2.      In consideration for the general release set out in paragraph three (3) below as well as other consideration provided and, assuming Plaintiffs do not breach the covenants referenced in paragraph three (3) or other material terms of this Agreement, the Authority agrees to the following:

a.      To pay a gross settlement amount of $42,000.00 (forty-two thousand dollars and zero cents). That gross amount shall be paid by three checks, as follows:

i.      The first check, payable to Stearns Poor, shall be in the amount of $6,000.00 (six thousand dollars and zero cents). This amount will be treated as back wages subject to withholding as the Authority deems appropriate.

ii.      The second check, payable to Phillip Roder, shall be in the amount of $8,500.00 (eight thousand five hundred dollars and zero cents). This amount will be treated as back wages subject to withholding as the Authority deems appropriate.

iii.      The third check, payable to Wenzel Fenton Cabassa, P.A., shall be in the amount of $27,500.00 (twenty-seven thousand five hundred dollars and zero cents) as attorney's fees and costs. The Authority will report the amount paid by the third check on a Form 1099 to Plaintiffs and Wenzel Fenton Cabassa, P.A.

b.      The payments in subparagraph (a) will be made within fifteen (15) business days after the date this Agreement has been fully executed by the parties, the Authority has received an executed Form W-9 and other necessary tax forms from Plaintiffs and Wenzel Fenton Cabassa, P.A., **and** the dismissal of the Litigation with prejudice.

3.      As consideration for the promises made by the Authority in this Agreement, including the amounts to be paid as described in paragraph two (2), Plaintiffs promise and are obligated to perform the following covenants under this Agreement:

**EXHIBIT A**

DocuSign Envelope ID: 7387422C-7BD5-4E86-948D-ED5A0CEEE0B6

a.      On behalf of themselves, their heirs, executors, personal representatives, administrators, and assigns, and anyone claiming by or through them, Plaintiffs, to the fullest extent permitted by law, forever unconditionally and irrevocably release, acquit, hold harmless, and discharge the Authority, as well as all of its affiliated or related entities, its past and present owners, directors, managers, supervisors, including, but not limited to, its attorneys, and its other current or former employees, from all claims, known or unknown, of any kind which Plaintiffs may have relating to the Authority and the other released parties referred to above.  This release includes, but is not limited to, all liabilities for the payment of earnings, commissions, bonuses, severance pay, salary, accruals under any vacation, sick leave, or holiday plans, any employee benefits, including, but not limited to, health and medical insurance benefits, and any claim or contribution to any short- or long-term incentives (including value appreciation rights or value creation awards, if any), 401(k), or other retirement plan from the Authority.  This release will also include any charge, claim, or lawsuit under any Federal or State Constitution, federal, state, or local law, as each may be amended from time to time, whether arising directly or indirectly from any act or omission, whether intentional or unintentional, including but not limited to, claims under Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000(e) et seq., as amended, the Civil Rights Act of 1991, the Civil Rights Act of 1866 (including any claim brought pursuant to 42 U.S.C. § 1981), the Americans with Disabilities Act, 42 U.S.C. §12101 et seq., the Fair Labor Standards Act, 29 U.S.C. §201 et seq., the Family and Medical Leave Act of 1993, 29 U.S.C. §2601 et seq., the Employee Retirement Income Security Act, 29 U.S.C. §1001 et seq., the Occupational Safety and Health Act, as amended, 29 U.S.C. §651, et seq., the National Labor Relations Act, as amended, 29 U.S.C. §141, et seq., the Immigration Reform Control Act, as amended, 29 U.S.C. §1801, et seq., the Equal Pay Act, the Worker Adjustment and Retraining Notification Act, the Vietnam Era Veterans Readjustment Assistance Act, the Fair Credit Reporting Act, the Sarbanes-Oxley Act of 2002, Dodd-Frank Wall Street Reform and Consumer Protection Act, 5 U.S.C. § 552a et seq., the Genetic Information Nondiscrimination Act, 42 U.S.C. § 2000ff-1, et seq., the Florida Civil Rights Act, Fla. Stat. §760 et seq., the Florida Equal Pay Act §725.07, claims under Florida's Worker's Compensation Anti-Retaliation Provision, § 440.205, Florida's Wage Rate Provision, § 448.07, Florida's Attorney's Fees Provision for Successful Litigations in Suits for Unpaid Wages, §448.08, Florida Minimum Wage Act, § 448.110, the Florida Private Whistleblower Act, §448.102 et seq., and any tort, contract, and quasi-contract or other common law claims, including, but not limited to, any grievance or claim under any collective bargaining agreement, claims for unpaid wages or overtime, wrongful termination, discrimination, harassment, retaliation, negligent or intentional infliction of emotional distress, negligent hiring, negligent supervision, negligence, invasion of privacy, defamation, slander, assault, battery, misrepresentation, and conspiracy.

b.      Plaintiffs agree not to sue the Authority or any other released party with respect to any charge or claim they have released in this Agreement.  If, despite this Agreement, Plaintiffs bring suit on the basis of any claim they have released, Plaintiffs will be liable to the Authority or any other released party for its attorney's fees, other defense costs, and any other damages caused by the lawsuit or action.  Plaintiffs promise not to accept any relief or remedies not set forth in this Agreement as to any claim released by this Agreement.

DocuSign Envelope ID: 7387422C-7BD5-4E86-948D-ED5A0CEEE0B6

c.      Plaintiffs agree that they continue to be bound by their obligations and promises to the Authority, except as specifically modified by this Agreement.

d.      Plaintiffs will not seek to volunteer with, or be employed or re-employed by the Authority or any of its successors, assigns, affiliates, parents, subsidiaries, or related entities, now or in the future as a volunteer, employee, consultant, or independent contractor.  Plaintiffs represent that, as a result of the circumstances regarding their volunteer service with the Authority, their relationship with the Authority is such that a volunteer or employment relationship with the Authority or its owners, successors, assigns, parents, subsidiaries, or affiliated or related entities, now or in the future, is impossible and impracticable.

4.      Plaintiffs hereby acknowledge and agree that the release set forth in paragraph three (3) above is a general release of all known and unknown claims to the date of this Agreement and Plaintiffs further expressly waive and assume the risk of any and all claims for damages which exist as of this date, but of which Plaintiffs do not know or suspect to exist, whether through ignorance, oversight, error, negligence, or otherwise, and which, if known, would materially affect Plaintiffs' decision to enter into this Agreement.  Prior to executing this Agreement, Plaintiffs warrant that they have not assigned or given away any claims released by this Agreement. Plaintiffs further agree that the consideration specified in paragraphs two (2)  and three (3) above has been accepted as a complete compromise of matters involving disputed issues of law and fact, and Plaintiffs assume the risk that the facts or law may be other than currently believed.

5.      Plaintiffs also waive any right to participate in a class, collective, or multi-party litigation in connection with their volunteer service.  In addition to giving up their right to claim benefits and/or damages described in paragraph three (3) above, Plaintiffs also separately agree not to participate in any way in any case asserting class, collective, or multi-party claims against the Authority that are related in any way to their volunteer service with the Authority, subject to paragraph six (6), below. This waiver applies to all claims arising out of their volunteer service or including claims brought under federal or state wage and hour laws, federal or state laws against discrimination, or any other claim against the Authority.

6.      Plaintiffs represent that they have not filed any other charges against the Authority, with the Equal Employment Opportunity Commission ("EEOC"), the Florida Commission on Human Relations ("FCHR"), the Federal or Florida Department of Labor, or any other federal, state or local agency, or any other suits, claims, or complaints against the Authority or the other released parties referred to above.  Nonetheless, <u>Plaintiffs understand that certain actions are not prevented by this Release</u>.  Plaintiffs understand that this Release does not prevent them from filing a charge with or testifying, assisting or otherwise participating in any manner in any investigation, hearing or proceeding conducted by the EEOC or a Fair Employment Practices Agency ("FEPA") or any federal, state, or local court or government agency, but they give up all rights to recover or receive damages, money, personal injunctive relief, or other personal benefits as a result of such charge, investigation, hearing, or proceeding.  Except as set forth herein, this release forever bars all other actions, claims, and suits which arose prior to the date of this Agreement, including, but not limited to, all other actions, claims and suits which arose or might arise in the future from any occurrences arising prior to the date of this Agreement.

DocuSign Envelope ID: 7387422C-7BD5-4E86-948D-ED5A0CEEE0B6

7.      Plaintiffs agree that they are solely and exclusively liable for any taxable event resulting from the payment of the sums set out in paragraph two (2) above by the Authority to Plaintiffs.  Plaintiffs' attorneys agree that they are solely and exclusively liable for any taxable event resulting from the payment of the sums set out in paragraph two (2) above by the Authority to them.  Plaintiffs agree to hold harmless and indemnify the Authority for any tax liability, interest, and/or penalties arising out of Plaintiffs' failure to pay taxes.  Plaintiffs' attorneys agree to hold harmless and indemnify the Authority for any tax liability, interest, and/or penalties arising out of their failure to pay taxes.

8.      This Agreement shall not in any way be construed as an admission by the Authority that it has acted wrongfully with respect to Plaintiffs, and the Authority specifically denies the same.  Indeed, nothing in this Agreement shall be deemed to constitute an admission or evidence of any wrongdoing or liability on the part of the Authority.  The parties specifically acknowledge that the Authority is providing the consideration in paragraph two (2) above solely to avoid the cost and business disturbance brought about by the continued litigation.

9.      Plaintiffs specifically acknowledge the following:

a.      Plaintiffs do not release or waive any right or claim which they may have that arises after the date of this Agreement.

b.      In exchange for this general release, Plaintiffs acknowledge that they have received separate consideration beyond that which Plaintiffs are otherwise entitled to under the Authority's policies.

c.      Plaintiffs are releasing, among other rights, all claims and rights under the Age Discrimination in Employment Act and the Older Workers' Benefit Protection Act, 29 U.S.C. § 621, et seq.

d.      Plaintiffs have twenty-one (21) days to consider this Agreement.  The parties agree that changes to this Agreement, whether material or immaterial, do not restart the running of the 21-day period.  If Plaintiffs sign the agreement before twenty-one (21) days, it is of their own free will and choice.  After signing the Agreement, Plaintiffs have seven (7) calendar days to revoke this Agreement after acceptance ("Revocation Period").  Plaintiffs understand that this Agreement does not become effective until after the Revocation Period expires.  Thus, no consideration will be paid until after the Revocation Period has expired.  *Additionally, for the revocation to be effective, Plaintiffs must give written notice of their revocation within the Revocation Period by personal service or certified mail to Benjamin W. Bard, Counsel for Tampa Sports Authority, Gray Robinson, P.A., 401 E. Jackson Street, Suite 2700, Tampa, FL, 33602.*

e.      Plaintiffs possess sufficient education and experience to fully understand the terms of this Agreement as it has been written, the legal and binding effect of the Agreement, and the exchange of benefits and promises herein.

f.      Plaintiffs understand and agree that the Authority's obligation to perform under this Agreement is conditioned upon their performance of this Agreement.

DocuSign Envelope ID: 7387422C-7BD5-4E86-948D-ED5A0CEEE0B6

g.    Plaintiffs have read this Agreement fully and completely and they understand its significance.

h.    Plaintiffs enter into this Agreement knowingly and voluntarily and of their own free will and choice.

i.    Plaintiffs have been encouraged and given the opportunity to consult with an attorney of their choice, which they have done.

10.    The Authority and Plaintiffs agree that, in the event it becomes necessary to enforce any provision of this Agreement, the prevailing party in such action shall be entitled to recover all their/its costs and attorney's fees, including those associated with appeals.

11.    This Agreement shall be binding upon Plaintiffs and the Authority as well as upon their/its heirs, administrators, representatives, executors, successors and assigns, and shall inure to the benefit of the Authority and the other released parties and their successors and assigns. Plaintiffs may not assign any rights or obligations under this Agreement without the written consent of the Authority.

12.    Other than as provided herein, the parties agree that each party is to bear their or its own attorney's fees, litigation costs, or expenses incurred in the course of obtaining legal advice on any claim asserted or that could have been asserted in the Litigation and/or in the course of the dispute or the negotiation of this settlement.

13.    Except as otherwise specifically provided herein, this Agreement is entered into without reliance upon any statement, representation, promise, inducement, or agreement not expressly contained within the terms hereof. This Agreement constitutes the entire understanding and agreement between the Authority and Plaintiffs with respect to the subject matter hereof, including any duties owed by the Authority to Plaintiffs. This Agreement supersedes and terminates all prior oral or written promises, representations, understandings, and agreements regarding this subject matter. This Agreement may not be changed, amended, or modified orally and no modification, amendment, or waiver of any provision contained in this Agreement, or any future representation, promise, or condition in connection with the subject matter of this Agreement, shall be binding upon any party hereto unless memorialized in a written agreement between the parties that expressly references this Agreement and identifies the provisions herein that are to be changed, amended, or modified. Such change, amendment, or modification must be signed by Plaintiffs and duly authorized officers or representatives of the Authority. Notwithstanding this provision, this Agreement shall not in any way diminish any obligation, duty, or undertaking owed by the Plaintiffs to the Authority because of any other contract, agreement, or law on a different subject matter. The rights and releases given to the Authority in this Agreement will be in addition to, and not in place of, any and all other rights held by the Authority by virtue of any other contract, agreement, or undertaking, and to that extent, the obligations of Plaintiffs survive the execution of this Agreement.

14.    This Agreement is made and entered into in the State of Florida, and shall in all respects be interpreted, enforced and governed, under the laws of the state. The language of all

DocuSign Envelope ID: 7387422C-7BD5-4E86-948D-ED5A0CEEE0B6

parts of this Agreement shall, in all cases, be construed as a whole, according to its fair meaning, and not strictly for or against any of the parties to this Agreement.

15.     This Agreement may be executed in counterparts, and each counterpart, when executed, shall have the effect of a signed original.

16.     Should any provision of this Agreement be declared or be determined by any Court to be illegal or invalid, the validity of the remaining parts, terms or provisions shall not be affected thereby, and said illegal or invalid part, term or provision shall be deemed not to be a part of this Agreement.

17.     Although Plaintiffs and their counsel have negotiated and agreed to all of the provisions in this Settlement Agreement and neither Plaintiffs nor their counsel have any reason to believe that any provision herein is illegal, invalid, or otherwise in violation of public policy, should any provision of this Agreement be declared or be determined by any Court to be illegal or invalid, the validity of the remaining parts, terms, or provisions shall not be affected thereby, and the illegal or invalid part, term, or provision shall be deemed not to be a part of this Agreement. However, if the Court's determination invalidates or deletes a material term to this agreement, then either the Authority or Plaintiffs may void the agreement. In that case, the parties agree that they will meet and confer in good faith to explore alternatives to resolve this matter.

18.     Concurrent with the execution of this Agreement, counsel for the Authority has delivered to counsel for Plaintiffs a Stipulation of Dismissal with Prejudice without costs or sanctions to any party for both the Litigation. Plaintiffs have authorized their attorney to execute the Stipulation, and hereby authorize counsel for the Authority to file the Stipulation with the Court and have an Order for Dismissal with Prejudice and without sanctions or cost to any party entered as a matter of record. The parties agree that each party is to bear their or its own attorney's fees, litigation costs, or expenses incurred in the course of obtaining legal advice on any claim asserted or that could have been asserted in the Litigation and/or in the course of the dispute or the negotiation of this settlement.

19.     All aspects of this Agreement are contingent upon the Court's approval of this Agreement and the dismissal of the Litigation with prejudice.

**[SIGNATURES APPEAR ON FOLLOWING PAGE]**

DocuSign Envelope ID: 7387422C-7BD5-4E86-948D-ED5A0CEEE0B6

**PLEASE READ CAREFULLY.  THIS AGREEMENT INCLUDES
A RELEASE OF ALL KNOWN AND UNKNOWN CLAIMS.**

_____
Counsel for Plaintiffs


Date:  02 / 22 / 2022

_____
Stearns Poor


Date:  02 / 22 / 2022


_____
Phillip Roder


Date:  02 / 22 / 2022


_____
Counsel for the Authority


Date:  2/24/22

_____
Tampa Sports Authority
(The Authority)


By:  Eric Hart


Its:  President/CEO

Date:  2/23/2022 | 1:27 PM PST